Coloock, J.
delivered the opinion of the Court.
This case has been very elaborately and ably argued by the counsel on both sides; but although it has been attempted to shew, that there is some difference between the case now made, and that formerly decided, yet it is certain, that no new principle has been applied to it. I have read again and again the opinions which have been delivered on former arguments, and they most undoubtedly cover all the grounds, and expressly decide on all the principles of law, on which the present argument has been raised. But as it seems tobe considered a question of. some difficulty, and is no doubt one of some importance to the parties. It is our duty to express our own views of the subject, although in doing so, I shall be compelled to travel a much beaten track.
As the case is now presented the first question is, whether the respondent is not protected in his office by the constitution of the State; and in order to establish the affirmative of this pi oposition, it is contended that he is a judge. There are some views of this part of the case, which I deem it proper to suggest, which have not been taken in the argument. I am not prepared to say, that every judge, eo nomine, which the Legislature might be pleased to appoint, would be protected in his office by the constitution of the State. The Legislature may appoint one to do certain duties, in *85 which the public may be much concerned, and call him a judge ; and yet it might be the duty of this Couit to say that he not a judge within the provisions of the constitution of this State. . . . . . The constitution is a declaration, by the people, of certain fundamental piinciples of government, by which they intended to be regulated ; and for this purpose they divided all the power, which is necessary to the regulation of civil society, into certain parts, or portions, assigning to certain tribunals, or individuals, by an official name, their respective portions of this power. The whole power is divided into the legislative, the executive, and the judicial: and in regard to the latter, the constitution provides, that it “ shall be vested in such superior and inferior Courts of law and equity, as the Legislature shall fromtime to time direct and establish. The judges of each shall hold their commissions during good behaviour, and the judges of the superior Courts, shall, at stated times, receive a compensation for their services, which shall neither be increased or diminished during their continuance in office ; but they shall receive no fees or perquisites -of office, nor hold any other office of profit, or trust, under this State, the United States, or any other power.” 1st section, 3rd article. The judicial power here spoken of, is to be vested in a Court, the judge of which shall hold his office' during good behaviour: and to bring an officer within this provision of the constitution, it is necessary that he should be appointed a judge of some Court, either one already established, or one newly created, over which he would preside ; and further, if he were appointed judge of a superior Court, it would be necessary to give him a salary. Now in the case before us, the officer not only does not eome within the description, but he has never been called a judge by the Legislature ; nor has he ever been so considered by any one. It is true, that in the case of Fenwicke v. Gibbes, in the year 1808, William H. Gibbes, the late master in equity, an officer performing the same duties which are now required to be performed by the commissioner in equity, is indirectly called a judge. -The language of the Court is, “ he is frequently a judicial officer. The determinations of this Court, the acts of Assembly of 1721, P, L. 110, and of 1746, P. L, 212, plainly evince him to be so. ■ In this capacity, he is a judge, and exercises his mind in forming decisions concerning the rights and interests of others.” 2 Desaus. 635. But it *86 was nota question before that Court, whether he was a judge in the sense, in which it is now contended, that (¡he commissioner is one; and therefore it is not an authoiity for us: and with the utmost deference to the Court, and to the judge who delivered the opinion, I am constrained to dissent from it altogether.
But I proceed to meet the argument as it has been presented to us. I do not understand the counsel for the respondent to contend, that the investment of any, and every power, in which there is that ■exercise -of the mind which may be ealledjudgment, will make the officer a judge; for by that course of reasoning we may have more judges than even they desire -: but I understand them as contending, that the granting of such power as is usually exercised by judges, or such judicial power as is exercised in the Courts of law, or equity, may constitute one a judge. Even in this limited sense, however, the position cannot be maintained. Great powers are given to the ipommissioner; powers which may be called judicial; powers, which it is clear, were once exercised by the judges alone; powers, greater than the master in equity exercised at the time a commissioner was first appointed: but is he invested with all the powers of a judge 1 Nullum simile est idem applies to the artificial, as well-as to the natural man. There may be many points of resemblance, and yet a most essential difference between two offices; and it is so strikingly obvious between these two -officers, the judge and the commissioner, that it is impossible that they can be mistaken for each other. The commissioner does possess some of the judicial powers; but he does not possess the essential characteristic of hearing and determining In all matters within the jurisdiction of the Court. It is said, that in some cases his decisions are final. This might be so, and yet it would not be enough. But he does not possess final power in any one instance; and the parallel, which has been drawn by the counsel for the applicant, between the powers of the commissioner, and those possessed by other officers of other Courts, is in most respects complete. The clerks of the Court of Common Pleas, for instance, possess equal powers in their departments, subject, also, to the final determination of the judges of their Courts.
I do not conceive it necessary to follow the counsel through the wide range of cases by which to test the powers which are exercised by the commissioner. As to one criterion, it 'cannot be denied, *87 that there are some very inferior judicial powers which can not be delegated; and it is, therefore, I admit, notan infallible criterion, by which to decide, that a power is not judicial, in its most unlimited and constitutional sense, to say that it cannot be delegated : but yet this is relied on as a test of judicial power by no less a person than Lord Coke. 4 Inst. 59, 88, 126, 128. Neither can I think it necessary to the correct decision of this case, to go back to the origin of the Court of Chancery, here or in England ; for none can doubt, but that the Legislative power of both countries can regulate the constitution of their Courts. In our Court of Equity, the master was not considered a judge, and he has never exercised the powers of one ; and although we find that in England one of the masters was made a judge, yet we find that eleven of them are still mere masters. The one who has become a judge has been so constituted. He was not made a judge by implication. He is commissioned ;. has a salary ; and he “hears and determines,” and his determination is only to be reversed by an appeal to a higher tribunal. The case of Hays v. Harley has been referred to, but it can afford no support to the respondent’s claim; for there the officer was a judge, always known as such, called a judge, presiding in w Court, and exercising the power of a judge, although in a limited jurisdiction. The Court was in existence before, and at, the adoption of the constitution; and therefore the judges of it were embraced in its provisions, as clearly as any judges of any Court in the State;
I will now proceed to consider the case in reference to the acts of Assembly. It is said first, that the act of 1812 did not limit the term of office of the master in equity ; but this is said in direct opposition to the- very words of the act, which are, “ the following officers shall be hereafter elected by joint ballot of both branches; of the Legislature, for the terms of time hereinafter mentioned;” and among those enumerated are " Registers, Masters and Commissioners of the Courts of Equity, for four years.” Now whether the Legislature could limit the term of office of the officer then acting as master, it being' conceded that he was in for life, which may be conceded without affecting this case, or whether they intended to do so, may admit of doubt; but it cannot therefore be doubted, that they had the power of limiting the term of office of any future master or commissioner. In 1813 they for the first time *88 PP°in(:ed a commissioner for Charleston District, and it is true did not limit his term of office, but that was for the best reason possible; to wit, that they had already done so by a previous general law on that subject, which embraced him, or any other, who should be thereafter appointed. Let it be admitted that the commissioner was clothed with all the powers of the master, still he, was a newly created officer, and his term of office did not depend on the tenure by which the master held. The act of 1812, as far as it regarded the person who then held the office of master, was repealed in 1,816, and it was also repealed as to other officers ; and by a very forced construction it is contended, that it was repealed as to the present respondent. That it can not refer to him, is put beyond all doubt by the words, “who were in office on the seventeenth day of December, one thousand eight hundred and twelve,” which follow the ' enumeration of officers, to which it 'was intended to apply. ° Masters and commissioners” were in office before, and at, the time of passing the act of 1812; and how then can it apply to the respondent, who was not’in office either before, or at, the time. It is asked, and much reliance seems to be placed on this, why the word masters was put in the act, if it did not intend to embrace the commissioner in equity, in Charleston District % for there was but one master in the State, and the word being in the plural, it must have been intended to embrace him. But for the qualification above referred to, perhaps this construction might have been contended for. But is clear, that it applies to both masters, and commissioners, by all the rules of common sense, as ■ well as those of grammatical construction ; and therefore could not comprehend him, either as a master, or a commissioner, for he did not hold office as either the one or the other in 1812. But I do not entertain a doubt, that the Legislature had a right to limit the term of office of the master in equity, and thatit'would have affected the then incumbent; that is, that there was no constitutional restriction on them which would prevent them from doing so, if they thought the good of the country required it. They did so in a case equally strong; in the case of a solicitor. It is true they thought themselves bound in honor to continue some persons who considered themselves as holding for life, or good behaviour, in office ; and in this I certainly concur with them; indeed I have *89 had cause most seriously to regret, that I ever did concur in limiting the term of any of the officers of the Courts ; for the records of the country are going fast to destruction throughout the State, where the system prevails, and the duties of other departments are performed in a most unsatisfactory manner. I do therefore wish that there had been an appointment to this office during good behaviour. But I am to declare what the law is, and it is too. plainly-written to be mistaken or misconstrued.
But if we could support the respondent in his construction of the acts, and believed that it was the intention of the Legislature, in the first establishment of his office,' to put him in all respects on a a footing of equality with the then master in equity, and that they considered him, consequently, as holding during good behaviour ; yet in this case I am of opinion, that the respondent, by having become a candidate for the office, under the terms prescribed by the act, had voluntarily resigned all right to the first tenure, and could not now claim the office. As to the right to surrender an estate, or office, I take it no authority is necessary; but whether the act of taking a lesser interest in a thing from the grantor, is an abandonment of a greater interest previously .possessed, may require some authority. I should say, however, that where it was clearly expressed by the grantor, that such was his intention, and the grantee remained in possession, he held by the last tenure; and for the reason, which is given by the writers on this subject, that the two titles are incompatible. Considering the case then on the ground of contract, the Legislature had said by a public act that the tenure of the office should be limited to four years-;' and they then declared the office vacant. Candidates presented themselves, and one is elected. Suppose the choice falls on him who before held, is not this a new contract? I cannot doubt it. It is said that the doubts of the respondent were stated, aid some objections presented at the first election; but he nevertheless entered the lists, and was voted for as a candidate for the office, -under the limitation fixed by law, and actually held the office. In Jacob’s Law Dictionary, Title Surrender, the law which I think applicable to this case, is collected. “ The surrender at commonlaw” it is said, “is the usual surrender, and is of two sorts: viz. a surrender in deed, or by express words in writing, where the words of the lessee to the lessor prove a sufficient assent to give him his estate *90 bac-k again; and a surrender in law, being that which is wrought by the operation of law, and not actual, as if a lessee for life, or years, take a new lease of the same land, during the term, this will be a surrender inlaw of the first lease.” “And this surrender in law, by taking a.new lease, holds good, though the second lease is for a less term than the first; and it is said that the second lease is a voidable lease. 5 Rep. 14, 6 Rep. 69, 10 Rep. 67, 1 Inst. 218, Cro. Eliz. 873.” “ A surrender may be made of letters patent to the king, to the end that he may grant the estate to whom he pleases; and a second patent for years to the same person, for the same thing, is a surrender in law of the first patent. 10 Rep. 66.” “ If an officer for life accepts of another grant of the same office, it is in law a surrender of the first grant; but if such an officer takes another grant of the same office to himSelf and another, it may be otherwise. 1 Ventr. 297, Cro. Jac. 198, Dyer, 167, 198, Godb. 415.”
On every ground, therefore, the motion must be dismissed.'

Appeal dismissed.